WILLIAM SONES, APPELLANT AND CROSS-APPELLEE, V. RICHARD H. SPIEGAL ET AL., APPELLEES AND CROSS-APPELLANTS.

140 N. W. 2d 799

Filed March 11, 1966. No. 35959.

W. A. Ehlers, for appellant.

Jerome Grossman, Marks, Clare, Hopkins & Rauth, and J. William Gallup, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

This is an action in equity by the plaintiff to cancel two allegedly usurious notes and real estate mortgages, to recover all money paid to defendants, and to recover possession of abstracts of title. The essential facts are undisputed. The evidence shows that plaintiff obtained two loans from the defendants. On the first loan dated October 15, 1957, the plaintiff gave a note and mortgage of $850 payable at the rate of $35 per month with interest at 7 percent, but he only received $500 as consideration. The second loan was dated April 10, 1958, from which plaintiff received $7,789.31 consideration in cash, but executed a note for $10,500 at 6 percent interest, payments being due in installments of $150 per month. The total payments made on the first note were $175 and a total of $6,150 was paid on the second note. At the time of the making of the $10,500 note the balance due on the $850 note dated October 15, 1957, was deducted in the sum of $698.02. The difference between the actual amounts loaned and the amount of the notes was termed a "discount" by the parties. The evidence shows that the defendants paid delinquent taxes on the mortgaged property in the sum of $1,414.11.

The judgment of the lower court found that the plaintiff received a total consideration of $8,114.31 on the note of April 10, 1958, consisting of $7,789.31 in cash and the cancellation of the note of $850 upon which there was a balance of principal owing in the sum of $325. The court found that payments in the sum of $6,150, 41 installments of $150, have been made, leaving a balance due on principal in the sum of $1,964.31; that the defendants were entitled to reimbursement in the sum of $1,414.11 for taxes paid; that the total amount due defendants was $3,378.42; and that foreclosure be granted defendants for this amount with interest at 6 percent from date of entry of judgment.

The case was heard on its merits in May 1963. The court took the case under advisement and decided it on

August 3, 1964. The court found that L.B. 17, Seventy-fourth (Extraordinary) Session, was applicable; that under the terms of said act the penalty for violation of the Installment Loan Act was changed retroactively to be a forfeiture and refund of all interest and charges on the loan involved; that the interest and charges exceeded the 9 percent maximum permissible under the act; that the loan was not void; and that the defendants were entitled to recover the balance due on the principal, without interest or charges, in the sum of $3,378.42.

Plaintiff complains of the fact that the district court held the case under advisement from May 1963 to August 3, 1964. At the time of the trial of the case, the law in effect would have rendered the notes and mortgages void and entitled the plaintiff to recover all payments made with interest. A loan of money made by a nonlicensee under the provisions of the Installment Loan Act, sections 45-114 to 45-155, R. R. S. 1943, which exacts interest and charges in excess of 9 percent per annum, is within the inhibitory provisions of the act. Pattavina v. Pignotti, 177 Neb. 217, 128 N. W. 2d 817; Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

No one questions the fact that the amount charged on the loans involved herein far exceeded the permissible 9 percent per annum.

The Legislature, however, changed the penalty to forfeiture of interest and charges only. The Legislature did this during the period this case was under advisement by the district court and the change was made retroactive on all transactions not reduced to final judgment. That the Legislature could validly change the penalty and give it a retroactive effect was decided in Davis v. General Motors Acceptance Corp., 176 Neb. 865, 127 N. W. 2d 907.

We know of no authority or rule that requires the district court to decide a case within a particular time

except that found in the Canons of Judicial Ethics adopted by the American Bar Association at its forty-seventh annual meeting at Philadelphia, Pennsylvania, on July 9, 1924, and found on page 224 of the current Directory of Attorneys issued by the Nebraska State Bar Association. "6. Industry. A judge should exhibit an industry and application commensurate with the duties imposed upon him," to which we would add that justice delayed is justice denied. The district court had jurisdiction of the case and had the power to take it under advisement. However, the law was in a state of flux and many cases were pending on appeal. We cannot say that the trial judge abused his discretion herein on the facts presented. We know of no rule prohibiting the court from doing this just because the law may be changed or ruled on as to issues presented in the case during the period of submission. There is no merit to plaintiff's contention.

Plaintiff contends the rule has not been changed, and that a usurious lender, whether licensed or not, cannot collect any part of the loan, principal, interest, or charges. We disagree. The Legislature changed the penalty by the enactment of L.B. 17, Seventy-fourth (Extraordinary) Session. L.B. 17 retroactively validated contracts that were previously usurious and void providing in effect that the principal could be collected. The inhibitory provisions of the Installment Loan Act applied to this usurious loan.

At the time of the transaction the loan was completely void. But, the retroactive repeal of the penalty provision of the act validated the contract and did not make it absolutely void. In the Davis case, we specifically held: "The Legislature may validate contracts which were illegal when made by the retroactive repeal of a previous law. Where the Legislature provides that a repeal shall be retroactive, contracts which were illegal when made, because of the law which has been repealed, are validated."

The case had not been reduced to final judgment at the time of the enactment of L.B. 17. The act, therefore, was applicable and the defendants were entitled to recover the balance of principal owing, after deduction of all payments made by the plaintiff.

The plaintiff contends that the defendants are not entitled to recover their payments of delinquent taxes. But, the mortgage contained a clause giving them this right, and we know of no reason why it should not be enforced.

The plaintiff complains of the trial court's ruling that each party was to pay its own costs. This matter rests in the sound discretion of the court. While the effect of the court's decision was to grant each party part of the relief it asked on the record herein we would consider this to be an abuse of discretion and determine that all costs should be taxed to the defendants.

Defendants, on cross-appeal, assert that the court erred in finding that the notes were usurious. Defendants do not deny that the amount of the charges on these loans was far in excess of the legal maximum. Defendants argue that they were ignorant of the law and because of the plaintiff's superior knowledge the plaintiff is not coming into a court of equity with "clean hands."

The evidence shows that the plaintiff was in the real estate business and the defendant Richard Spiegal was in the furniture business. There is no evidence of fraud or deception. Both parties consummated the transaction with their eyes open. They went to a lawyer to have the papers drawn up. Each one of them was presumed to know the law. The evidence as to the inequality of the positions of the parties is unconvincing. It does show that the plaintiff was a necessitous borrower and initiated the transactions on the notes. The evidence simply shows that the plaintiff participated in an illegal and usurious transaction. This is insufficient to bar him from relief. In Lloyd v. Gutgsell, 175 Neb. 775, 124 N. W. 2d 198, this court said: "This court has in the past refused to apply

the so-called 'clean hands' doctrine in usury cases against the borrower as a participant in a usurious transaction, on the theory that the borrower is in vinculis and not in pari delicto to the lender as regards the usury. State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215. This is not a new doctrine. It is found in the early English and American cases. In 1781 Lord Mansfield, in summing up to the jury in Lowe v. Waller, 2 Doug. 735, told it: '* * * the statute of usury was made to protect men who act with their eyes open; to protect them against themselves.' * * * That is and has been the rule in this jurisdiction. To hold otherwise would make usury statutes a hollow mockery."

The undisputed facts demonstrate the usurious nature of these loans. There is no merit to defendants' cross-appeal.

The judgment of the district court is correct except as modified and is affirmed as modified.

AFFIRMED AS MODIFIED.