277 N.W.2d 76 (1979)
202 Neb. 717
Herman BANKS et al., Appellants and Cross-Appellees,
v.
BOARD OF EDUCATION OF CHASE COUNTY HIGH SCHOOL DISTRICT NUMBER 15 et al., Appellees and Cross-Appellants.
No. 41884.
Supreme Court of Nebraska.
March 27, 1979.
*77 Law Offices of Kenneth Cobb, P. C., Kenneth Cobb, Lincoln, for appellants and cross-appellees.
Murphy, Pederson & Piccolo and LeRoy Anderson, North Platte, for appellees and cross-appellants.
Perry, Perry, Witthoff & Guthery, Lincoln, for Lincoln Public Schools, amicus curiae.
McGill, Koley, Parsonage & Ryan, P. C. by Vern Moore, Jr., Omaha, for Westside Public Schools, amicus curiae.
Malcolm D. Young, Omaha, for Millard Public Schools, amicus curiae.
*78 Shrout, Christian Kriege & Merwald, Omaha, for Ralston Public Schools, amicus curiae.
Deutsch, Jewell, Otte, Gatz, Collins & Domina, Norfolk, for Norfolk Public Schools, amicus curiae.
William G. Cambridge, Hastings, for Hastings Public Schools, amicus curiae.
Sidner, Svoboda, Schilke, Wiseman & Thomsen, Fremont, for Fremont Public Schools, North Bend Public Schools and Logan View Public Schools, amicus curiae.
Kelley Baker, Lincoln, for Nebraska State School Board Ass'n, amicus curiae.
Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY and WHITE, JJ., and SPENCER, Retired Justice.
WHITE, Justice.
This action was brought by residents and taxpayers of Chase County High School District No. 15, a Class VI district, against the Board of Education of that district. The plaintiffs sought: (1) A declaration that section 79-548.01, R.R.S.1943, is unconstitutional, and an injunction prohibiting the expenditure of funds already collected under tax levies made pursuant to that section; (2) a declaration that a contract for the purchase of real estate for athletic field purposes was null and void; and (3) a declaration that a contract for architectural services entered into by the board was null and void.
The District Court found that the board was without authority to purchase the land, and for the defendants on all other issues. The plaintiffs appeal and the defendants cross-appeal. We affirm.
At an election in which approval of the building of a new school plant was sought, the proposition was defeated. Subsequently the board signed a contract for the purchase of 38 acres of land, not adjacent to the existing site. The board also approved a contract for architectural services in the amount of $11,000, for the design grading, draining, and location of facilities for a running track and football field, on the 38-acre site.
Payment for the land and the architect's fee were met from the special fund established, pursuant to section 79-548.01, R.R.S. 1943, from a 4-mill levy approved by the board.
We first address the issue, raised by the plaintiffs, of the constitutionality of section 79-548.01, R.R.S.1943. The section provides: "The board of education of any Class III, IV, V, or VI school district may establish a special fund for the purposes of acquiring sites for school buildings or teacherages and purchasing existing buildings for use as school buildings or teacherages, including the sites upon which such buildings are located, and the erection, alteration, equipping and furnishing of school buildings or teacherages and additions to school buildings for elementary and high school grades and for no other purpose. Such fund shall be established from the proceeds of an annual levy, to be determined by the board of education, of not to exceed four mills on the dollar upon the assessed value of all taxable property in the district, except intangible property which shall be in addition to any other taxes authorized to be levied for school purposes. Such tax shall be levied and collected as are other taxes for school purposes."
Plaintiffs argue that the section is an unlawful delegation of legislative authority. Plaintiffs rely on Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N.W.2d 227, where this court invalidated the statutory scheme authorizing the director of the Department of Agriculture to prescribe regulations for Grade A milk. Violation of the regulations promulgated by the director were made a criminal offense. "The attempt of the Legislature to thus grant to the director the power to create criminal offenses violates all fundamental concepts relating to the delegation of legislative authority." Lincoln Dairy Co. v. Finigan, supra. No criminal penalties are involved here. The power delegated by the statute is the power to levy a tax, and the tax is clearly limited as to amount and purpose. *79 The plaintiffs' contention that the Legislature is without constitutional authority to make such a delegation is without merit. Campbell v. Area Vocational Technical School No. 2, 183 Neb. 318, 159 N.W.2d 817, is controlling here: "A school district is a creation of the Legislature. Its purpose is to fulfill the constitutional duty placed upon the Legislature `to encourage schools and the means of instruction' and it is a governmental subdivision to which authority to levy taxes may properly be delegated under the Constitution."
Plaintiffs further assert that section 79-548.01, R.R.S.1943, violates Article VIII, section 1, of the Nebraska Constitution. That section provides in part: "The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct." (Emphasis supplied.) Plaintiffs' position is that since section 79-548.01, R.R. S.1943, contemplates the creation of a fund, the tax it purports to authorize is not for a "necessary" revenue.
The word "necessary" is not one with a clear-cut fixed meaning. Numerous cases have analyzed its meaning within a given statute, contract, or will provision. The plaintiffs cite cases equating "necessary" with "indispensable," e. g., Wolf & Son v. Independent School District, Etc., 51 Iowa 432, 1 N.W. 695. At the other end of the spectrum are those which define "necessary" to include that which is merely "convenient," e. g., Higdem v. Whitham, 167 Mont. 201, 537 P.2d 1185. In this case, the word "necessary" is found in the constitutional provision which is a general grant to the Legislature of the taxing power. The determination of what is necessary revenue under that section can only be made with reference to the duties imposed in the other sections of the Constitution. The relevant "other section" here is Article VII, section 1, Nebraska Constitution, which commands the Legislature to " * * * provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." If the tax authorized under section 79-548.01, R.R.S. 1943, has as its purpose the raising of revenue which could reasonably be said to be necessary for the maintenance of the public schools, then it must be upheld as constitutional. The trial court said: "An analysis of the above stated constitutional provision (Article VIII, section 1) shows that it is applicable to both the state and its subdivisions. A holding that the provision prohibits present tax for future improvements would, under present conditions, prevent the state from levying now for future acquisitions. In a state which has a history of aversion to build now and pay later, this does not seen reasonable. There has never, so far as the Court could find, been a constitutional restriction requiring construction or purchases by bonded debt. Large purchases must always require taxes ahead or after the fact. They are often `necessary,' and over the long run as `necessary' as meeting current expenses. In the absence of a constitutional provision prohibiting the accumulation of funds or requiring votes of the people for the accumulation of funds, it seems it should not and is not prohibited." We agree.
We now consider the authority of the board to enter into a contract for the purchase of land. The site was originally proposed as the location of an entire new high school. When the bond issue to finance the new school was rejected by the voters, the board arranged to purchase the land for the running track and football field.
Sections 79-503 et seq., R.R.S. 1943, which are applicable to Class VI school districts under section 79-1103, R.R. S.1943, grant authority to direct the purchase of a site for a "schoolhouse * * * or other school buildings" to the voters, as opposed to the board, of the school district. See specifically section 79-506, R.R.S.1943. An athletic program is a proper, and probably necessary, part of any high school curriculum. Since the statute envisions "other school buildings" as being something different from "schoolhouse," it clearly must include an athletic facility with a cost in excess of $200,000. See Nicholas v. Calhoun, 204 Miss. 291, 37 So.2d 313; School *80 Dist. U2-20 Jt. v. Fanning, 232 Or. 593, 377 P.2d 4, and decisions cited in Fulk v. School Dist. No. 8 of Lancaster County, 155 Neb. 630, 53 N.W.2d 56. The board was thus without authority, absent voter approval, to purchase the site, unless it can be said that the site selection procedure was changed by section 79-548.01, R.R.S.1943. It was not. The legislative history confirms what is clear on the face of the act. Section 79-548.01, R.R.S.1943, is a revenue measure only. There was no intention to withdraw from the electors the control over school site selection given them by section 79-503 et seq., R.R.S.1943. The trial court was correct in holding that the board lacked authority to purchase the site.
Finally, we reach the issue of the validity of the board's contract with the Wilson architectural firm. Architectural fees are general expenses, not expenses of building which must be submitted to the voters. See Fiske v. School District of the City of Lincoln, 58 Neb. 163, 78 N.W. 392, affirmed on rehearing, 59 Neb. 51, 80 N.W. 265. The plans submitted under the architectural contract in that case were apparently of a more preliminary nature than those submitted in the case at bar, but we reject the plaintiffs' attempt to distinguish the Fiske case on that basis, for the rationale espoused there is equally applicable here. The plans are a prerequisite to obtaining an estimate of the cost for the project and to provide the board with information necessary for decisions on financing. It is, therefore, possible that plans would never be realized. As an exercise and necessary expense of the planning duties of a school board, architectural expenses on proposed improvements are general expenses.
The plaintiffs next argue that the meeting, at which the architectural contract was let, violated Nebraska's public meetings law. Section 84-1411, R.R.S.1943, contains the relevant provisions of the public meetings law. It provides, in part, that: "(1) Each public body shall give reasonable advance publicized notice of the time and place of each meeting by a method designated by each public body and recorded in its minutes. Such notice shall be transmitted to all members of the public body and to the public. Such notice shall contain an agenda of subjects known at the time of the publicized notice, or a statement that the agenda, which shall be kept continually current, shall be available for public inspection at the principal office of the public body during normal business hours. The public body shall have the right to modify the agenda to include items of an emergency nature only at such public meeting."
In this case, the board meeting which authorized the approval of the contract with Wilson & Company was held on December 11, 1975. Notice of the meeting was posted at the high school, the courthouse, and the post office on December 9, 1975. The notice stated that the agenda for the meeting could be obtained at the office of the superintendent. The agenda included notice of a "discussion" with John Smutz of Wilson & Company. It stated that the discussion "should result in determining whether we want this company or not." The language may not be a model of clarity, but did inform the public that an agreement with the architect was to be discussed and possibly entered. The contention is without merit.
The final attack is directed to section 79-503, R.R.S.1943, which requires 5-days notice to the voters of annual and special meetings. The section is concerned with building, leasing, or changing a schoolhouse site, all of which require voter approval. As determined above, a contract for architectural services involves a general expense and may be approved by the board without voter approval. All members of the board were present and none complain of inadequate notice.
Finally, the school board complains of the taxation of costs against it by the trial court. Taxation of costs is a matter resting in the sound discretion of the trial court. See Sones v. Spiegal, 179 Neb. 838, 140 N.W.2d 799. In view of the success of the plaintiffs in invalidating the land sale contract, it cannot be said that the court abused its discretion in assigning costs to the school board.
*81 The order of the trial court is affirmed.
AFFIRMED.